**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-03258-CMA

SAVE THE COLORADO,
THE ENVIRONMENTAL GROUP,
WILDEARTH GUARDIANS,
LIVING RIVERS,
WATERKEEPER ALLIANCE, and
SIERRA CLUB,

      Petitioners,

v.

TODD T. SEMONITE, in his official capacity as the Chief of the U.S. Army Corps of
Engineers,
DAVID BERNHARDT, in his official capacity as Acting Secretary of the Interior, and
AURELIA SKIPWITH, in her official capacity as Acting Director of the U.S. Fish and
Wildlife Service,

      Respondents, and

CITY AND COUNTY OF DENVER, ACTING BY AND THROUGH ITS BOARD OF
WATER COMMISSIONERS,

      Respondent-Intervenor.

---

**ORDER**

---

This case concerns a proposed reservoir expansion in Boulder County,

Colorado. (Doc. # 45-1, ¶¶ 1-2). The Denver Board of Water Commissioners ("Denver

Water") seeks to enlarge a reservoir that collects water for the City of Denver and

surrounding counties. (Doc. # 49-1, p. 6). Denver Water applied for and received federal

approval for the project. (Doc. # 49-1, pp. 12-15).

1

A collection of environmental groups then sued to block the project, alleging that approval was improperly granted. (Doc. # 45-1, ¶ 7). They argue that Respondents – the heads of three Federal Agencies who played a role the approval process – violated federal law by greenlighting the reservoir expansion. (Doc. # 45-1, ¶ 7). Respondents now move to dismiss the lawsuit for lack of jurisdiction. (Docs. # 49). Denver Water intervened as a Respondent, and it has also filed a motion to dismiss. (Doc. # 47). For the following reasons, the motions to dismiss are granted.

## I.     BACKGROUND

Denver Water owns and operates the Gross Reservoir and Dam ("Reservoir") in Boulder County, Colorado. (Doc. # 49-1, p. 11). The Reservoir collects and stores water for the City of Denver and the surrounding counties. (Doc. # 49-1, p. 11). Denver Water operates the Reservoir under a license issued by the Federal Energy Regulatory Commission ("FERC"). (Doc. # 48, p. 6).

Some years ago, Denver Water began exploring options to expand the Reservoir to meet growing need. (Doc. # 49-1, pp. 6, 12). It settled on a plan to raise the height of the dam and increase the Reservoir's storage capacity (the "Project"). (Doc. # 49-1, p. 12). Before beginning construction on the Project, however, Denver Water had to apply for various federal permits and approvals. (Doc. # 48, p. 15). These included (1) a permit from the Army Corps of Engineers ("Corps") under Section 404 of the Clean Water Act (to discharge fill material during construction); and (2) an amendment to Denver Water's FERC license for the Reservoir (to operate a larger dam). (Doc. # 48, p. 15; Doc. # 49-1, p. 6).

Both the Corps and the FERC approved Denver Water's requests, and Denver Water was poised to move forward with the Reservoir expansion. (Doc. # 49-1, p. 6).

Petitioners, a collection of environmental groups that oppose expansion of the Reservoir, filed this lawsuit against the Corps and the Service, seeking to cancel their authorization for the Project. (Doc. # 45-1, 68). (Doc. # 45-1, ¶¶ 11-31). Though they concede that Denver Water obtained all necessary permits for the Project, Petitioners argue that those permits should not have been issued. (Doc. # 45-1, ¶ 7). Specifically, they claim that the Corps failed to fully consider the environmental impacts of the Project before authorizing it, thus violating various federal environmental laws. (Doc. # 45-1, ¶ 7). Petitioners also argue that the U.S. Fish and Wildlife Service ("Service") issued a "fatally flawed" biological opinion about the environmental impact of the Project, which led to Corps approval. (Doc. # 45-1, ¶ 160).

Respondents filed a motion to dismiss this case for lack of jurisdiction, arguing that the Federal Power Act ("FPA") gives the federal courts of appeals exclusive jurisdiction over cases, like this one, involving "a controversy over a[n] FERC licensing decision." (Doc. # 49, p. 7).

Petitioners counter that they are not directly challenging a FERC order, so the FPA does not apply. (Doc. # 54, pp. 13-14).

As explained in more detail below, the Court concludes that dismissal is proper.

## II.   LEGAL STANDARD

 "[S]ince the courts of the United States are of limited jurisdiction, there is a presumption against jurisdiction." *City of Lawton, Okl. v. Chapman*, 257 F.2d 601, 603

(10th Cir. 1958). The party invoking the Court's jurisdiction bears the burden of overcoming this presumption. "[T]he party invoking the jurisdiction of the court[] has the burden of pleading and proving the existence of jurisdiction." *Wilshire Oil Co. of Tex. v. Riffe*, 409 F.2d 1277, 1282 (10th Cir. 1969); *see also Port City Props. v. Union Pac. R.R. Co.*24, 518 F.3d 1186, 1189 (10th Cir. 2008) ("The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction."). Dismissal pursuant to Rule 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. "When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), the Court is free to consider facts and information outside the complaint to resolve any jurisdictional disputes." *Hale v. Ashcroft*, 683 F. Supp. 2d 1189, 1196 (D. Colo. 2009).

### III.   ANALYSIS

The FPA provides that federal courts of appeals have "exclusive" jurisdiction over challenges to FERC actions:

> Any party to a proceeding under this chapter aggrieved by an order issued by the [FERC] in such proceeding may obtain a review of such order in the United States court of appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia[.] . . . [S]uch court shall have jurisdiction, which upon the filing of the record with it shall be exclusive.

> 16 USC § 825*l*(b).

Respondents argue that Petitioners' complaint falls within the exclusive jurisdiction of the courts of appeals pursuant to the FPA. Although Respondents concede that Petitioners are not directly challenging the FERC's decision to amend Denver Water's

license, they argue that Petitioners "are raising claims that inhere in the controversy over the FERC order." (Doc. # 49-1, p. 19). Specifically, Respondents argue that the Corps' and the Services' actions were "steps on the path to FERC's decision to amend the license," (Doc. # 48, p. 8), and that "[t]he issues raised in the Petition are inescapably intertwined with FERC's licensing process." (Doc. # 48, p. 26). Therefore, they argue, the FPA's exclusive-jurisdiction provision applies to this action, and this Court is without jurisdiction to hear this case.

Petitioners counter that they are not directly challenging any order of the FERC; they are challenging only "the Corps' and Service's separate, independent actions." (Doc. # 53, p. 8). Therefore, they argue, the FPA's exclusive-jurisdiction provision does not apply.

The Court agrees with Respondents.

The FPA vests the federal courts of appeals with exclusive authority to review FERC licensing orders. 16 USC § 825*l*(b). This exclusive-jurisdiction provision prevents district courts from hearing not only challenges to a FERC order itself, but also from hearing "all issues inhering in the controversy" related to a FERC order. *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958) (the FPA "necessarily precluded de novo litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review."). Thus, where a party does not challenge a FERC order itself, but challenges another agency order that is inextricably linked to the FERC order, the FPA's exclusive-jurisdiction provision applies and precludes this Court from exercising

jurisdiction. *Id. See also* New Oxford American Dictionary 893 (3d ed. 2010) ("inhere" means "to exist essentially or permanently in").

It is clear from Petitioners' arguments that their causes of action "inhere in the controversy" related to Denver Water's FERC license. Although Petitioners claim that they are challenging only the decisions of the Corps and the Service, they concede that those decisions were part and parcel of the FERC licensing process: "the Corps' CWA decision is the 'but for' cause that triggered FERC's license." (Doc. # 53, p. 8). Indeed, Petitioners attempted to intervene in the FERC licensing process, raising many of the same arguments that they raise in this case. *City and Cnty of Denver, CO*, 165 FERC P 61120, 2018 WL 6015905 (FERC, November 15, 2018). It was only after their attempt to intervene was denied as untimely that Petitioners filed this lawsuit. *Id.* Petitioners even go so far as to describe the FERC as "the Corps' sister agency and a cooperating agency on this project." (Doc. # 45-1, ¶ 116). Thus, the Court has little trouble concluding that, by their own admission, Petitioners' claims "inhere in the controversy" related to Denver Water's FERC license.

Petitioners argue, however, that the FPA does not apply because the Corps' decision "operate[s] independently from FERC's licensing order." (Doc. # 53, pp. 12-13). Therefore, they contend, this Court should apply the more general jurisdictional provisions contained in the Administrative Procedure Act, 5 U.S.C. §§ 702, 704. (Doc. # 53, pp. 12-13). The Court disagrees.

Petitioners' argument has at least three major flaws. First, "when two jurisdictional statutes draw different routes of appeal, the well-established rule is to

apply only the more specific legislation." *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989); *see also Connors v. Amax Coal Co.*, 858 F.2d 1226, 1231 (7th Cir.1988) ("Generally, when jurisdiction to review administrative determinations is vested in the courts of appeals these specific, exclusive jurisdiction provisions preempt district court jurisdiction over related issues under other statutes."). Here, the FPA is the more specific jurisdictional statute, so it should apply.

Next, although Petitioners attempt to characterize the actions of the Corps and the Service as "separate" and "distinct" from the FERC's licensure decision, (Doc. # 53, p. 23), it is clear that the three decisions are inextricably intertwined. All three decisions concern the Gross Reservoir expansion Project, and Plaintiff concedes that the Project could not go forward without the approval of all three agencies. (Doc. # 53, p. 8 ("the Corps' CWA decision is the 'but for' cause that triggered FERC's license")). Thus, each agency's participation was a necessary ingredient in the Project's federal approval process.

Finally, if the Court were to accept Petitioner's argument, it would violate the longstanding judicial preference for avoiding piecemeal litigation. Where a lawsuit involves multiple federal agencies, and one agency's actions can be reviewed in this Court while another's cannot, "the bifurcated suit could result in inconsistency, duplication, and delay." *Nat'l Parks and Conservation Ass'n v. F.A.A.*, 998 F. 2d 1523, 1529 (10th Cir. 1993). Thus, "if there is any ambiguity as to whether jurisdiction lies with a district court or with a court of appeals," the Court "must resolve that ambiguity in favor of review by a court of appeals." *Id.* (internal quotation omitted).

Applying these principles, the Court concludes that it lacks jurisdiction to hear this case, and the case must be dismissed.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Respondent-Intervenor's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) (Docs. ## 47, 49) and GRANTS Federal Defendants' Motion to Dismiss for Lack of Jurisdiction (Docs. ## 49, 49-1). The Case is hereby dismissed without prejudice, and the Clerk is directed to close the case.


DATED:  March 31, 2021

BY THE COURT:


CHRISTINE M. ARGUELLO
United States District Judge