IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-03258-CMA-AP

SAVE THE COLORADO, THE ENVIRONMENTAL GROUP, WILDEARTH GUARDIANS, LIVING RIVERS, WATERKEEPER ALLIANCE, INC., SIERRA CLUB,

    Petitioners,

v.

LT. GEN. SCOTT A. SPELLMON, in his official capacity as the Chief of the U.S. Army Corps of Engineers; DEBRA HAALAND, in her official capacity as Secretary of the Interior; and MARTHA WILLIAMS, in her official capacity as Director of the U.S. Fish and Wildlife Service,

    Respondents,

and

CITY AND COUNTY OF DENVER, ACTING BY AND THROUGH ITS BOARD OF WATER COMMISSIONERS,

    Respondent-Intervenor.

---

**REPLY IN SUPPORT OF PETITIONERS' MOTION
TO COMPEL PRIVILEGE LOG**

## INTRODUCTION

Petitioners sought the modest relief of an order compelling the production of a privilege log—as is customary in civil litigation generally and Administrative Procedure Act ("APA") cases specifically—after agency officials expressly acknowledged under oath that they neither produced any purportedly "privileged" documents as part of their administrative record nor even identified those documents and the asserted basis for their withholding from the record. *See* ECF No. 118. It is unassailable that these documents, in the absence of a properly asserted privilege, must be included in the record because no one disputes that they were directly or indirectly considered by the decisionmakers in rendering the decisions challenged in this case—i.e., the relevant APA standard for inclusion of materials in an administrative record.

In response, Respondents take aim at several straw men rather than confronting Petitioners' actual arguments. In so doing, they cite the wrong legal standard for compelling privilege logs and fail to confront applicable precedent from this and other courts requiring privilege logs under precisely these circumstances. Accordingly, the Court should order Respondents to prepare a privilege log similar to all other APA cases in this Court addressing this question.

## ARGUMENT

In their opposition, *see* ECF No. 125, Respondents raise several points that warrant a response. Petitioners address each below.

**1.** The linchpin of Respondents' opposition is that Petitioners must establish—but have not—that the existing records are inadequate to permit meaningful

judicial review, or that the existing records, by clear evidence, are not complete. *See* ECF No. 125 at 5-10. But this is patently the wrong legal standard.

At the outset, Petitioners emphasize that they are *not* seeking to complete the records, nor would they do so unless they ultimately decide, after reviewing a privilege log, that in their view Respondents have improperly asserted privileges with respect to particular documents. Thus, Respondents have inaccurately characterized the relief sought by Petitioners, which in reality has nothing to do with ordering "in camera review to scrutinize any privilege assertions," *id.* at 1, in an effort to erroneously graft a higher legal standard (i.e., the motion to complete standard) onto a routine request for a privilege log. Despite Respondents' attempt to distort the applicable legal standard, Petitioners seek one simple and narrow form of relief: an order directing Respondents to produce a privilege log so that Petitioners can ascertain whether all purportedly "privileged" documents were properly withheld from the record.

For motions to compel privilege logs, the standard is not the same as motions to complete the record. *See* ECF No. 118 at 3-4. Because the purpose of a privilege log is to determine *in the first instance* whether materials were improperly withheld from the record due to the assertion of privilege, compelling privilege logs is consistent with the presumption of regularity. Indeed, courts have made clear that this presumption, if it applies in the context of privilege logs, is *automatically* rebutted once agency officials acknowledge withholding privileged materials without producing a privilege log. *See New York v. U.S. Immigr. & Customs Enf't*, 438 F. Supp. 3d 216, 218 (S.D.N.Y. 2020); *Bartell Ranch v. McCullough*, No. 3:21-cv-80, 2021 WL 6118738, at *3 (D. Nev. Dec. 27, 2021); *Ctr. for Food Safety v. Vilsack*, No. 15-cv-1590, 2017 WL 1709318, *3 (N.D.

Cal. 2017); *In re Clean Water Act Rulemaking*, No. 20-cv-4636, 2020 WL 6686370, at *2-3 (N.D. Cal. Nov. 12, 2020) (finding that "[t]his alone satisfies plaintiffs' burden" where an agency "concede[s] that a considerable number of deliberative documents have been excluded from the administrative record").

Accordingly, Respondents' opposition is predicated on a mistaken view of the law and fails to grapple with the correct legal standard set forth in Petitioners' motion. The failure even to address the proper standard—let alone apply it to the relevant facts—is a sufficient basis for ordering a privilege log where an agency official explicitly acknowledges withholding documents on the basis of privilege. *See* ECF No. 83-1 ¶ 7.

**2.** Conspicuously, Respondents have failed to point to a *single* case—let alone one that is binding on this Court—holding that a plaintiff must demonstrate that the record is inadequate or incomplete before entitlement to a privilege log. This void is not surprising, given that only the government has seen the purportedly "privileged" materials and knows the number, length, author, and subject of such documents, as well as the privileges asserted to withhold them from the record. Logically, a plaintiff that has not yet seen a privilege log has no basis for ascertaining whether the record is, in fact, complete. Thus, forcing a plaintiff to come forward at this stage to demonstrate an inadequate or incomplete record would impose a genuinely impossible burden.

It is telling that the two cases primarily relied upon by Respondents arose in completely different contexts and actually support Petitioners. In *Camp v. Pitts*, the Supreme Court concluded that a lower court erred by failing to limit its review to the administrative record and conducting a de novo hearing where it accepted extra-record testimony and evidence. *See* 411 U.S. 138, 143 (1973). The Court explained that "the

3

remedy was not to hold a de novo hearing" but rather to decide whether the agency's action "is sustainable on the administrative record made." *Id.* Likewise, in a similar situation, the Tenth Circuit reversed a trial court's de novo review in an APA case that resulted in substantial witness testimony, trial exhibits, and other extra-record evidence. *See Franklin Sav. Ass'n v. Off. of Thrift Supervision*, 934 F.2d 1127, 1139-40 (10th Cir. 1991). The Court of Appeals held that "review [must] be confined to the administrative record in accordance with the APA," and found that the extra-record de novo hearing went "far beyond the [trial] court's permissible scope of review." *Id.*

These cases are harmonious with Petitioners' position in the pending motion, which does not seek to expand the scope of review in this case outside the agencies' administrative records. As the *Camp* and *Franklin Savings* courts instructed, Petitioners seek only to rely upon the records, albeit full records that contain all *non-privileged* documents that were directly or indirectly considered by the agencies. Importantly, Respondents do not dispute that the documents withheld on the basis of purported "privilege" were directly or indirectly considered by Respondents. By definition, therefore, the only thing standing between the inclusion of these documents in the record is the fully obscured assertion of "privilege" that, in the absence of a privilege log, will remain in the dark. *See Bar MK Ranches v. Yuetter,* 994 F.2d 735, 739 (10th Cir.1993) (holding that agency records must contain "all documents and materials directly or indirectly considered by the agency"); *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1276 n.10 (D. Colo. 2010) (Kane, J.) (holding that "the whole record also includes . . . . the work of and recommendations of subordinates" so long as "the agency decision maker based his decision on" them).

4

In sum, Petitioners' requested relief is consistent with Respondents' cited cases. Petitioners merely seek a privilege log to ensure that improperly applied privileges have not precluded a full record; they do not seek to expand the scope of review beyond the documents that must comprise the administrative record. *See, e.g., New York*, 438 F. Supp. 3d at 218 ("Production of a privilege log does not give the Court any occasion to expand the administrative record to encompass any document not properly included; it simply allows the Court to have some oversight of the agency's assertions of privilege, the same role it would assume with respect to any other litigant.").[1]

**3.** Respondents conveniently sidestep *any* response to Petitioners' detailed discussion of this Court's precedents uniformly ordering a privilege log in APA cases where an agency did not produce a privilege log at the time it lodged the record. *See* ECF No. 118 at 5-7 (citing numerous cases). If Respondents' legal position were correct, it would mean that Judges Kane, Martinez, Tafoya, and Krieger—among others—acted contrary to the APA and controlling authority by compelling privilege logs in circumstances indistinguishable from this case.

Yet in none of those instances did the government appeal, let alone successfully appeal, the trial court's order requiring a privilege log. This is almost certainly because Petitioners' position regarding privilege logs is the correct view of the law, long accepted

---

[1] Respondents' reliance on *United States v. Zolin* also misses the mark. *See* ECF No. 125 at 12. There, the Supreme Court did not question courts' authority to order privilege logs. *See* 491 U.S. 554 (1989). Rather, the Court faced the different question of whether an opponent of a privilege—which had *already* been asserted through an approach comparable to a privilege log—must satisfy any threshold showing to obtain in camera review. To that question, the Court held that "a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege"; thus, "[t]he threshold we set, in other words, need not be a stringent one." *Id.* at 571-72. This in no way constrains this Court's ability to order a privilege log consistent with the APA.

and adopted by this Court and others within the Tenth Circuit. Indeed, the government often *voluntarily* produces privilege logs along with its records in APA cases (thereby avoiding the need for motions to compel), which it plainly would not do unless the APA required privilege logs. For instance, Respondents' counsel in this case asked the Court in a previous matter to allow the agency an opportunity to "conduct a privilege review[] and assert any privileges that may be applicable," which Judge Kane allowed by ordering a privilege log. *See Ctr. for Native Ecosystems*, No. 1:09-cv-1463-JLK, ECF No. 34 at 18 (requesting the ability to assert privileges); 711 F. Supp. 2d at 1276 n.10 (ordering privilege log on the basis of the government's request to do so).

Put simply, agencies routinely supply privilege logs in APA cases in this Court (and others), and in the rare instances where an agency refuses to do so, members of this Court have held agencies accountable by ordering the government to comply with this fundamental APA obligation. Respondents have not articulated any lawful basis for departing from this Court's longstanding precedent (as mandated by the APA) of ordering privilege logs to ensure the Court has the "whole record." 5 U.S.C. 706.[2]

---

[2] Respondents cite two cases from this Court, neither of which supports their position. While citing *WildEarth Guardians v. U.S. Forest Service*, 713 F. Supp. 2d 1243, 1254 (D. Colo. 2010), Respondents fail to explain that Judge Kane ordered a privilege log over the government's objection in that case. *Id.* at 1265-67; *id.* at 1266 (noting "[t]he 'bedrock [APA] principle' that the party asserting the privilege must prove its applicability," and the failure to do so "results in a waiver of privilege *where the privilege is not sufficiently justified through a privilege log*" (emphasis added)). Likewise, while Judge Martinez did "not endorse yet another procedural layer" in a different APA case, that matter did not involve a privilege log at all; rather, it dealt with a request for the court to "pre-determine[] the proper argumentative uses of every document in the record." *Colo. Env't Coal. v. Off. of Legacy Mgmt.*, 08-cv-1624-WJM-MJW, 2017 WL 897838, at *4 (D. Colo. Mar. 7, 2017). If anything, those rulings strongly support Petitioners' motion that seeks to ensure the record before the Court is whole.

      **4.**      In essence, Respondents ask this Court to accept on blind faith that the agencies have properly applied privileges to a large "number of documents the agencies must collect, catalogue, review for privilege, and index," if the Court compels a privilege log. ECF No. 125 at 15. This Orwellian "trust us" approach—which could allow agencies to unilaterally and without oversight skew records by scrubbing them of documents the government deems harmful to its position—cannot be squared with the Constitution, the APA, or this Court's longstanding precedents requiring privilege logs in civil litigation generally and APA cases specifically.

      Citing voluminous authority, Petitioners explained the grave danger in allowing agencies free rein to one-sidedly demarcate the "record" absent oversight by opposing parties or courts. *See* ECF No. 118 at 10-15. Respondents shrug off these serious concerns, ignoring the many courts that have found the government's refusal to prepare privilege logs highly troubling. *Id.* But the government cannot escape the unavoidable fact that under its approach, "[a]bsent any opportunity for judicial review, the definition of 'deliberative' would be unknowable to all except the agency itself," which would subvert the very purposes underlying APA review. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, No 2:19-cv-14243, 2020 WL 2732340 (S.D. Fla. May 26, 2020); *see also Ksana Kupaqa Xa'lcin v. U.S. Fish & Wildlife Serv.*, No. 19-cv-20, 2020 WL 4193110, at *2 (D. Mont. Mar. 9, 2020) ("[J]udicial review would be severely undermined if agencies could keep information from the court merely by classifying them as deliberative."); *Wyoming v. U.S. Dep't of Interior*, No. 07-cv-0319, 2008 WL 11335191, at *2 (D. Wyo. Oct. 3, 2008) ("A court simply could not perform its duty of determining the pre-decisional and deliberative nature of a document unless that court has some kind of

information concerning the omitted document."); *id.* (noting that it "would effectively bar judicial review of an agency's decision to omit certain documents from the . . . record").

The government's approach would confer agencies unfettered authority to distort the scope and content of records—whether deliberately or ineptly—due to the lack of *any* supervision or accountability. This erodes the system of checks and balances by immunizing the Executive Branch from the "searching and careful review" entrusted to the judiciary under the Constitution. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 537 (2009) (Kennedy, J., concurring in part and concurring in the judgment); *see also Wyoming*, 2008 WL 11335191, at *2 (rejecting agency's attempt "to unilaterally determine which documents should be included in the administrative record" because it "would prevent any court review of the agency's decision to omit certain records, and would leave parties, such as Petitioners, with no legal recourse").

Accordingly, it is well within this Court's constitutionally and statutorily assigned duties to compel a privilege log (as several members of this Court have done) so that Petitioners may review Respondents' assertions of privilege and then determine whether additional action might be warranted based on the privilege log.[3]

---

[3] Respondents cite *Friends of Animals v. U.S. Fish & Wildlife Service*, but that case does not help the government. There, the plaintiffs *already* had access to the specific documents they wanted in the record, and thus they filed a motion to *complete* the record, *see* 4:18-cv-00053, 2019 WL 8137578, at *1 (D. Utah Dec. 27, 2019), which is subject to a more stringent legal standard than the pending motion here. In any case, Respondents' suggestion that the Freedom of Information Act ("FOIA") is a suitable substitute for a privilege log in an APA case is wrong. Under FOIA, as in APA cases, agencies may withhold purportedly "privileged" documents from disclosure, *see* 5 U.S.C. 552(b)(5); this is why courts *require* agencies to produce the equivalent of a privilege log (called a *Vaughn* index) in FOIA cases to ensure that agencies have *properly* invoked privilege assertions when withholding records. *See, e.g., Rocky Mountain Wild v. U.S. Bureau of Land Mgmt.*, 445 F. Supp. 3d 1345, 1355 n.3 (D. Colo. 2020) (Martinez, J.) ("A *Vaughn* index is the FOIA equivalent of a privilege log.").

8

**CONCLUSION**

Once again, Petitioners respectfully request that the Court grant their motion, order Respondents to file a privilege log by a date certain, and set forth a schedule for Petitioners to review the privilege log and then raise any potential disputes informally with Respondents (and formally with the Court, if necessary).

Respectfully submitted,

/s/ *William S. Eubanks II*
William S. Eubanks II
EUBANKS & ASSOCIATES, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(970) 703-6060
bill@eubankslegal.com