# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-3258-CMA

SAVE THE COLORADO, a Colorado nonprofit corporation;
THE ENVIRONMENTAL GROUP, a Colorado nonprofit corporation;
WILDEARTH GUARDIANS, a nonprofit corporation;
LIVING RIVERS, a nonprofit corporation;
WATERKEEPER ALLIANCE, INC., a nonprofit corporation; and
SIERRA CLUB, a nonprofit corporation,

  Petitioners,

 v.

LIEUTENANT GENERAL WILLIAM GRAHAM, JR., in his official capacity as the Chief of the U.S. Army Corps of Engineers; DEB HAALAND, in her official capacity as Secretary of the Interior; and MARTHA WILLIAMS, in her official capacity as Director of the U.S. Fish and Wildlife Service,

  Respondents,

 and

CITY AND COUNTY OF DENVER, ACTING BY AND THROUGH ITS BOARD OF WATER COMMISSIONERS,

  Respondent-Intervenor.

---

## PETITIONERS' REPLY IN SUPPORT OF THEIR MOTION FOR AN INJUNCTION AND VACATUR

---

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  Respondents Continue to Mischaracterize The Project and Its Harms in an Effort to Preclude any Meaningful Relief from the Court ........................................... 1

II. Petitioners Are Entitled to the Default, Presumptive Remedy of Vacatur ................. 3

III. Petitioners Have Established Their Entitlement to a Tailored Injunction Against Denver Water Pending Compliance with the CWA and NEPA .................................. 6

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*City & Cty. of Denver*, 172 FERC ¶ 61,063 (July 16, 2020) ............................................. 2

*Colo. Wild v. U.S. Forest Serv.*,
   523 F. Supp. 2d 1213 (D. Colo. 2007) ....................................................................... 4

*Crutchfield v. U.S. Army Corps of Eng'rs*,
   192 F. Supp. 2d 444 (E.D. Va. 2001) ......................................................................... 9

*Diné Citizens Against Ruining Our Env't v. Haaland*,
   59 F.4th 1016 (10th Cir. 2023) .................................................................................. 5

*Fla. Wildlife Fed'n v. U.S. Army Corps of Eng'rs*,
   404 F. Supp. 2d 1352 (S.D. Fla. 2005) .................................................................... 10

*Monsanto v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ................................................................................................. 6

*N.C. v. Va. Beach*,
   951 F.2d 596 (4th Cir. 1991) ................................................................................... 10

*Nat'l Parks Conserv. Ass'n v. Semonite*,
   422 F. Supp. 3d 92 (D.D.C. 2019) ............................................................................. 5

*Nat'l Parks Conserv. Ass'n v. Semonite*,
   925 F.3d 500 (D.C. Cir. 2019) ................................................................................. 10

*Park Cnty. Res. Council v. U.S. Dep't of Agric.*,
   817 F.2d 609 (10th Cir. 1987) ................................................................................... 9

*Save the Colo. v. Spellmon*,
   50 F.4th 954 (10th Cir. 2022) ........................................................................... 1, 2, 7

*Sierra Club v. Marsh*,
   872 F.2d 497 (1st Cir. 1989) ..................................................................................... 4

*Sierra Club v. U.S. Army Corps of Eng'rs*,
   645 F.3d 978 (8th Cir. 2011) ..................................................................................... 4

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
   985 F.3d 1032 (D.C. Cir. 2021) ................................................................................. 5

*Valley Cmty. Preserv. Comm'n v. Mineta,*
   373 F.3d 1078 (10th Cir. 2004) ................................................................................ 10

*WildEarth Guardians v. Bernhardt*,
   423 F. Supp. 3d 1083 (D. Colo. 2019) ....................................................................... 4

**Statutes**

16 U.S.C. § 806 .............................................................................................................. 7, 8

**Regulations**

18 C.F.R. § 12.24 ................................................................................................................ 8

18 C.F.R. §§ 12.30-12.42 .................................................................................................... 8

40 C.F.R. § 230.11(h) ......................................................................................................... 2

**Other Citations**

Denver Water, FERC Application Vol. 3, Attach. E-2 ....................................................... 2

Petitioners have amply demonstrated entitlement *both* to vacatur of the Corps' Record of Decision ("ROD"), Final Environmental Impact Statement ("FEIS"), and Clean Water Act ("CWA") Permit, *and* to a permanent injunction to ensure meaningful practical relief during a remand to the Corps to comply with National Environmental Policy Act ("NEPA") and the CWA. *See* ECF No. 157. The briefs filed by the Corps and Denver Water, *see* ECF Nos. 155, 156, misapply the law and relevant facts.

I.  **Respondents Continue to Mischaracterize The Project and Its Harms in an Effort to Preclude Any Meaningful Relief from the Court**

Petitioners already explained the broad scope of the Corps' authority over the Moffat Collection System Project that formed the basis of its CWA and NEPA analyses, and the catastrophic environmental effects that the Project will cause, ECF No. 157 at 1-2, 5-7. Respondents continue to misrepresent the Corps' authority. *See* ECF No. 156 at 10 n.3 (asserting that any "harm Petitioners face from allowing work on the project to continue would not emanate from fill authorized by the Corps permit"); ECF No. 155 at 7 (dismissing harms because "[t]he small amount of fill allowed by the 404 permit has long been placed at the foot of the Dam"). Respondents' maneuvering must be laid to rest.

Respondents have *twice* lost this issue. In the Tenth Circuit, they argued that the Federal Energy Regulatory Commission ("FERC") has more expansive jurisdiction over the Project than the Corps. But the Court of Appeals emphatically rejected their view, which "ignore[s] the differences between the issues decided by the Corps and [FERC]." *Save the Colo. v. Spellmon*, 50 F.4th 954, 961 (10th Cir. 2022). The panel explained that the Project contains a hydroelectric dam component, over which the agencies have dual authority, which is subsumed within the broader Project requiring *only the Corps' approval* due to the foreseeable "effect of discharges on a massive water supply

1

crossing several counties," in contrast to FERC's "consider[ation] [of] only the effect of the dam and reservoir on a single reservoir in Boulder County." *Id.* at 963.

Pointing to *Denver Water's* license amendment application, the panel found that "[g]iven the different geographic scopes, [Denver Water] acknowledges that the Corps' analysis extended beyond [FERC's]"—including an evaluation of "greater diversions of water from the West Slope"—which are "in the Corps' jurisdiction but not [FERC's]." *Id.*; *see also id.* (quoting the FERC application: "Denver Water believes *the scope of analysis for [FERC's] license amendment decision is narrower"* than for the Corps' LEDPA decision under the CWA). Indeed, Denver Water has long conceded that "[t]he enlargement of Gross Reservoir is a component of the water supply project referred to as the 'Moffat Collection System Project' being analyzed and permitted by the [Corps] under a Section 404 Permit." Denver Water, FERC Application Vol. 3, Attach. E-2 at 1, https://rb.gy/zg25go (click "Final License Amendment Application"). Thus, the panel held that "if [Petitioners] succeed [against the Corps], the [FERC-approved] hydroelectric project itself might be in jeopardy" because Denver Water "needed a [CWA] discharge permit to raise the dam and expand the reservoir." *Save the Colo.*, 50 F.4th at 971.[1]

Ignoring the Tenth Circuit's explicit findings, Denver Water then asserted this case is moot because it has now filled all wetlands under the Corps' Permit, *see* ECF No. 138 at 11-18, despite the fact that the CWA and NEPA extend the Corps' authority to all foreseeable effects that stem from the Corps' issuance of the Permit. *See, e.g.*, 40

---

[1] FERC agrees that the Corps' authority "includes facilities outside the [FERC] project boundary and features not within [FERC's] unit of development," and that the Corps (not FERC) thus has jurisdiction over "the need for Denver Water's proposed expansion of the Moffat Collection System" and "environmental issues associated with the expansion of the Moffat Collection System that do not pertain directly to the FERC license." *City & Cty. of Denver*, 172 FERC ¶ 61,063, 61,609 n.8, 61,611 n.25 (July 16, 2020).

2

C.F.R. § 230.11(h) (requiring the LEDPA evaluation to include "secondary effects" that "are associated with a discharge of dredged or fill materials, *but do not result from the actual placement of the dredged or fill material*" (emphasis added)). This is why *every* alternative the Corps evaluated in detail—under NEPA *and* in its substantive LEDPA analysis under the CWA—included consideration and scrutiny not only of the placement of fill, but *also* dam construction, reservoir enlargement, tree removal, wildlife impacts, and diversions (and their costs) that would unavoidably flow from the Corps' selection of a specific alternative. Hence, this Court correctly rejected Denver Water's mootness argument that characterized relief here in a manner divorced from reality. *See* ECF No. 151 at 40-42 (rejecting the unavailability of relief because the Corps retains jurisdiction over the Project, and holding that the Court *can* thus "affect [] trees, water, and wildlife").

Respondents deserve no third bite at the apple. Whether the Court rejects their eleventh-hour attempt to narrow the reach of the Corps' authority under the CWA and NEPA through the law of the case doctrine, as a matter of estoppel, or merely as inconsistent with the Corps' broad authority over the Project and with Denver Water's prior representations affirming the Corps' extensive scope of authority, the Court should shut the door once and for all on Respondents' illogical, unsupported view.[2]

## II. Petitioners Are Entitled to the Default, Presumptive Remedy of Vacatur

Petitioners articulated the Tenth Circuit's test (adopted from the D.C. Circuit) that governs relief in this case and demonstrated why Petitioners are entitled to the standard remedy—vacatur of the ROD, FEIS, and Permit—while noting that the Court's order

---

[2] While taking a narrow view of its ongoing Project authority, the Corps also claims wide latitude in "permanently" enforcing Permit conditions that are *broader* than the limited fill Denver Water discharged—e.g., conditions to mitigate the effects of construction, reservoir enlargement, and river diversions. ECF Nos. 156 at 3, 156-2 at 5-6, 8-11.

3

should, like other courts, allow for continued environmental mitigation, site stabilization, monitoring, and maintenance. *See* ECF No. 157 at 4-9. Denver Water sidesteps the issue, except to insist that vacatur alone would not "require work on the Project to stop." ECF No. 155 at 10. The Corps, for its part, seeks remand without vacatur. *See* ECF No. 156 at 1. But it misapplies both prongs of the test and fails to satisfy the heavy burden required to deviate from the presumptive remedy of vacatur in environmental cases.

To begin, Respondents acknowledge that the Court must *at least* remand this matter to the Corps and the agency *must* "address the NEPA and CWA deficiencies" by going back to square one to "reexamine the purpose and need" and freshly evaluate "alternatives, the LEDPA finding, cost metric, and climate change impacts." ECF No. 156 at 6; *see also* ECF No. 155 at 10 (agreeing that the Corps must "address the errors found" and "tak[e] further action as appropriate" based on its new analysis and LEDPA determination). This reinforces not only that the Corps retains discretion on remand to alter the Project's ultimate trajectory, but also the need for meaningful relief that halts construction *before* the Project and its irreversible harms become a *fait accompli*.[3]

As to the first vacatur factor—the seriousness of the defects—the Corps tries, but fails, to downplay the gravity of its errors. Importantly, the Corps admits its new process may "change the Corps' evaluation of the appropriateness of these decisions, or . . . bear on whether the CWA's legal standards for granting a permit are satisfied." ECF No.

---

[3] *See WildEarth Guardians v. Bernhardt*, 423 F. Supp. 3d 1083, 1105 (D. Colo. 2019) (finding that "vacatur or an injunction is necessary" to avoid a bureaucratic steamroller under NEPA; "remand without vacatur or [an] injunction would incentivize agencies to rubber stamp a new approval, rather than take a true and informed hard look"); *Colo. Wild v. U.S. Forest Serv.*, 523 F. Supp. 2d 1213, 1220-21 (D. Colo. 2007) (same); *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 995 (8th Cir. 2011) ("[T]he failure to comply with NEPA's requirements causes harm itself, specifically the risk that 'real environmental harm will occur through inadequate foresight and deliberation'" (quoting *Sierra Club v. Marsh*, 872 F.2d 497, 502 (1st Cir. 1989) (Breyer. J.)).

4

156 at 7. The Corps then pivots to the *wrong* standard, asserting there is "a serious possibility that the Corps can justify *the issuance of the permit* after more CWA and NEPA work." *Id.* at 5-6 (emphasis added). But courts have uniformly *rejected* that formulation of the test. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1052 (D.C. Cir. 2021) ("[T]he vacatur inquiry asks not whether the ultimate action could be justified, but whether the agency could, with further explanation, justify its decision *to skip that procedural step*." (emphasis added)); *Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1049 (10th Cir. 2023) (same).

Accordingly, whether the Corps could ultimately reissue the Permit is *irrelevant*; what matters (and the Corps does not address) is whether the Corps could lawfully reissue the Permit after again failing to satisfy the CWA and NEPA procedures it never addressed the first time, merely by further explaining *why* it did not do so. *See, e.g., Nat'l Parks Conserv. Ass'n v. Semonite*, 422 F. Supp. 3d 92, 99 (D.D.C. 2019) (finding serious defects where "the Corps cannot substantiate its initial procedural decision to forgo" certain NEPA analyses, even though "the Corps could ultimately substantiate [its] original substantive decision to issue to the permit" after more process). Put simply, the Corps articulates (and responds to) the *wrong* vacatur test; regardless, the Corps cannot explain its way out of the very serious procedural and substantive defects that go to the heart of the CWA and NEPA. *See* ECF No. 151 at 42-83; ECF No. 157 at 4-5.

For the second factor, the Corps correctly focuses on the relative environmental harms of granting or denying vacatur, but misapplies the test. ECF No. 156 at 9. First, the Corps says *nothing* about the irreparable ecological harm Petitioners and the public will suffer without meaningful relief—harm that flows directly from the Corps' unlawful conclusion that the Project is the LEDPA, which the Corps admits may not be the result

5

on remand. *Id.* at 6-7. Second, the agency misunderstands the Court's broad discretion to tailor relief; it asserts that vacatur "would remove" the Permit's myriad "environmental protections" and eliminate the Corps' "ability to enforce those conditions." *Id.* at 1, 9. But courts routinely vacate agency actions while preserving an agency's ability (or requiring a permittee) to ensure activities during remand that will benefit the environment and mitigate a project's adverse effects. *See* ECF No. 157 at 3, 7 (citing cases). Thus, the Corps is wrong that vacatur of this kind will "make the special conditions a nullity," ECF No. 156 at 9. Any asserted environmental harms due to vacatur are therefore illusory.

In sum, the Corps has not satisfied its heavy burden for remand without vacatur, failing at both steps to overcome Petitioners' strong showing that the default remedy of vacatur is necessary to preserve the integrity of the CWA/NEPA process on remand.

### III. Petitioners Have Established Their Entitlement to a Tailored Injunction Against Denver Water Pending Compliance with the CWA and NEPA

Anticipating correctly that Denver Water would insist that vacatur alone will not "require work on the Project to stop," ECF No. 155 at 10, Petitioners demonstrated that each factor supports an injunction to maintain the status quo, ECF No. 157 at 8-10, which would have a "meaningful practical effect independent of [] vacatur." *Monsanto v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Respondents' defenses do not tip the scales in favor of allowing Project construction based on the unlawful Permit, especially where the Corps' new analysis may well point to a different alternative as the LEDPA.

Obscuring that Petitioners seek to enjoin Denver Water's actions, *see* ECF No. 157 at 10 & n.10 (citing cases enjoining CWA permittees), the Corps contends "[t]here is no basis for injunctive relief against FERC, a non-party, on matters regulated by and under the jurisdiction of FERC." ECF No. 156 at 9. But Petitioners do not seek any relief

6

against FERC. And, as the Tenth Circuit already held, success against the Corps and an accompanying remedy may well interfere with Denver Water's activities regulated by FERC—because they are subsumed within the larger Project approved by the Corps—but that in no way limits the full array of remedies available to this Court *against the Corps and Denver Water*. *See supra* at 2 (citing *Save the Colo.*, 50 F.4th at 971). Likewise, Denver Water's contention that "[t]he Court should not enter relief that interferes with construction of Gross Dam in compliance with FERC's Order," ECF No. 155 at 1, rings hollow. That is a transparent attempt to relitigate the question squarely answered by the Tenth Circuit—i.e., this lawsuit is *not* a collateral attack on FERC's license merely because meaningful relief in this case likely places "in jeopardy" Denver Water's activities under the new FERC license. *See Save the Colo.*, 50 F.4th at 971.[4]

Denver Water also predictably overstates the risks of enjoining construction for the short time period until the Corps completes its new process on remand. ECF No. 155 at 2-3. Petitioners already addressed these equitable arguments, *see* ECF No. 157 at 6-9, but two issues warrant further discussion. First, despite raising the specter of "flooding events" and "flooding risks," ECF No. 155 at 2, 8, Denver Water's engineer explains that the FERC-approved plan requires Gross Reservoir to be kept *well below* "its full capacity (50 feet below full elevation)," which "mitigate[s] risks to the structure, as well as retain[s] interim storage capacity for stormwater inflows to avoid flooding risks to nearby communities given the current lack of a spillway." ECF No. 155-1 ¶ 8. Thus,

---

[4] Despite Denver Water's characterization of the license timelines as inviolate, FERC *routinely* extends construction timelines, as expressly contemplated in the Federal Power Act. *See* ECF No. 157 at 2 n.2; 16 U.S.C. § 806. There is nothing to suggest FERC would not act in good faith to allow sufficient time for the Corps to come into legal compliance with the CWA and NEPA, including by lawfully determining the LEDPA.

7

unless Denver Water violates FERC's plan by holding more water than allowed by the license, any flooding risks from a temporary halt to construction are non-existent.

Second, insofar as modest interim alterations are needed despite the lack of any genuine flooding risk, the Court could, like other courts, allow site stabilization, monitoring, and maintenance activities during an injunction, including (if necessary) construction of a temporary spillway. *See* ECF No. 157 at 3 n.3, 8, 9. While Denver Water complains that this would "require additional analysis" and "approv[al] by FERC," ECF No. 155-1 ¶¶ 11-12, that is true of *any* FERC-approved project that is later affected by court orders, acts of nature, or material shortages. This is precisely why the Federal Power Act and its regulations allow FERC to extend construction timelines *and* provide an independent review process to ensure project safety, whether in the first instance or in the event project changes prove necessary. *See* 16 U.S.C. § 806; 18 C.F.R. §§ 12.24(b), (c), 12.30-12.42. Nor is there any reason FERC would need "4 years," ECF No. 156-1 ¶ 12, to approve modest *interim* changes, rather than an initial design.

Denver Water's laches argument is also a dead end. It ignores the Court's finding that *Denver Water* acted with unclean hands, *see* ECF No. 151 at 42, 42 n.26, 85 n.42. Equally troubling, it disregards the chronology and realities of this case, including:

- Petitioners filed suit in 2018 (ECF No. 1)—two years before FERC amended Denver Water's license, and four years before Denver Water began construction.

- The parties proposed—and the Court approved—a schedule in which merits briefing would conclude by February 10, 2020 (ECF Nos. 20, 21)—i.e., *before* FERC issued its license amendment or any Project construction began.

- After the Corps spent several months consulting under the Endangered Species Act (ECF No. 37)—thereby requiring a Supplemental Petition for Review—the Corps and Denver Water filed motions to dismiss *two years* after Petitioners filed this case (ECF Nos. 48, 49-1). Proceedings on Respondents' motions to dismiss wasted 25 months when merits briefing and resolution could have taken place— all during a time frame when construction had yet to commence.

8

- Once the case returned to this Court—around the time Denver Water started construction in late 2022—Petitioners moved as swiftly as possible (despite Federal Respondents' refusal to provide a privilege log, *see* ECF No. 127) to brief the merits of this case and tee it up for prompt resolution by the Court.

- Merits briefing concluded in February 2024 (ECF No. 143)—two months *before* Denver Water started to raise the new dam. Because of the voluminous size of the record and the Court's need for oral argument, Denver Water partially raised the dam while the Court considered and resolved the merits (ECF No. 151).

This timeline clearly shows that Petitioners have diligently prosecuted this case, promptly navigating Respondents' evolving efforts to avoid or delay its resolution.

Moreover, "[l]aches must be invoked sparingly in environmental cases because ordinarily the plaintiff will not be the only victim of alleged environmental damage"; "[a] less grudging application of the doctrine might defeat Congress's environmental policy." *Park Cnty. Res. Council v. U.S. Dep't of Agric.*, 817 F.2d 609, 617 (10th Cir. 1987). In the rare instances in which courts have applied laches, projects are "nearly completed" such that further NEPA or similar review would be *purposeless*. *Id.* at 618-19. That, of course, is *not* the case here where the dam is only partially raised, trees have yet to be cut, water has yet to be diverted, and wildlife has yet to be affected—i.e., a new LEDPA and NEPA analysis could fundamentally transform the ultimate outcome of this Project.

In the case most analogous to this one—involving a partially constructed project by a county that violated NEPA and the CWA—laches did *not* apply. *See Crutchfield v. U.S. Army Corps of Eng'rs,* 192 F. Supp. 2d 444, 463-64 (E.D. Va. 2001). Noting that "Plaintiffs did not move for a preliminary injunction," the court explained that "it is not at all clear that [they] could have met the test for preliminary injunctive relief" and, in any event, they repeatedly "put the County on notice" it was "proceeding improperly" and an injunction "might ensue if the Plaintiffs were correct." *Id.* The same is true here. Not only would a preliminary injunction motion in this fact-bound, record-based case be a futile

9

exercise under the exacting standard to obtain that relief—and Denver Water does not suggest otherwise—but such an effort, albeit futile, would have only wasted more time, further delaying the Court's review of the immense record and resolution of the merits.[5]

The two cases cited by Denver Water do not help them. The first case involved a *preliminary* injunction, where the court found the plaintiffs were unlikely to succeed on the merits—not, as here, a request for permanent relief after the plaintiffs prevailed. *See Valley Cmty. Preserv. Comm'n v. Mineta,* 373 F.3d 1078, 1087-93 (10th Cir. 2004). In the other case, the court stated that "construction which lies beyond the boundaries of [an agency's] jurisdiction can be enjoined only when it has a direct and substantial probability of influencing [the agency's] decision," *N.C. v. Va. Beach*, 951 F.2d 596, 603 (4th Cir. 1991). That is *exactly* the case here where the Corps' new LEDPA and NEPA analyses must (as before) include the not-yet-constructed Project components, and that new process will bear upon the LEDPA that the Corps *must* select under the CWA.

Importantly, the tailored injunction Petitioners seek would merely maintain the status quo during remand, rather than order Denver Water to deconstruct the partially built dam or restore the unlawfully filled wetlands. *See* ECF No. 157 at 10 n.11 (citing cases where courts entered mandatory injunctions to tear down projects and/or restore wetlands after finding comparable legal violations). Accordingly, in addition to vacatur, the Court should enjoin Denver Water from further construction to preserve the integrity of the Corps' CWA and NEPA processes and ensure Respondents' regrettable actions do not further subvert Congress's express intent in both statutes. *See, e.g., Fla. Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 404 F. Supp. 2d 1352, 1359-67 (S.D. Fla. 2005).

---

[5] *See Nat'l Parks Conserv. Ass'n v. Semonite*, 925 F.3d 500, 501-02 (D.C. Cir. 2019) (noting the denial of requests for preliminary injunctions, which contributed to project completion "the week before we issued our opinion" finding the Corps violated NEPA).

Respectfully submitted

*/s/ William S. Eubanks II*
William S. Eubanks II
bill@eubankslegal.com

Matthew R. Arnold
matt@eubankslegal.com

Eubanks & Associates, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(970) 703-6060

*Counsel for Petitioners*

11