IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-3258-CMA

SAVE THE COLORADO, a Colorado nonprofit corporation;
THE ENVIRONMENTAL GROUP, a Colorado nonprofit corporation;
WILDEARTH GUARDIANS, a nonprofit corporation;
WATERKEEPER ALLIANCE, INC., a nonprofit corporation; and
SIERRA CLUB, a nonprofit corporation.

                Petitioners,

 v.

LIEUTENANT GENERAL WILLIAM H. GRAHAM, in his official capacity as Chief of Engineers of the U.S. Army Corps of Engineers, et al.,

                Respondents, and

CITY AND COUNTY OF DENVER, ACTING BY AND THROUGH ITS BOARD OF WATER COMMISSIONERS,

                Respondent-Intervenor.

---

**RESPONDENT-INTERVENOR'S MOTION FOR STAY PENDING APPEAL**

---

Jessica R. Brody
Crystal J. Easom
DENVER WATER
1600 West 12th Avenue
Denver, CO 80204-3412
(303) 628-6460
Jessica.brody@denverwater.org

Amanda Shafer Berman
Elizabeth Boucher Dawson
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2500
aberman@crowell.com

*Attorneys for Respondent-Intervenor, the City and County of Denver,
acting by and through its Board of Water Commissioners*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

BACKGROUND .................................................................................................... 2

ARGUMENT.......................................................................................................... 4

I.      The Court Should Stay the Order and Opinion Pending Appeal.......................... 4

        A.      Irreparable harm will result if a stay is not entered.................................... 4

        B.      Denver Water is likely to prevail on appeal ............................................... 7

                i.      The Court incorrectly found error in the Corps' alternatives
                        analysis ...................................................................................... 7

                ii.     The Court applied the wrong legal standards to conclude
                        that the Corps did not sufficiently consider climate change
                        impacts or costs .......................................................................... 10

                iii.    The Court failed to narrowly tailor injunctive relief........................ 13

        C.      The equities and public interest favor a stay........................................... 14

CONCLUSION .................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Survival v. Surface Transp. Bd.*,
   704 F.3d 615 (9th Cir. 2012) ................................................................. 6, 7

*Auer v. Robbins*,
   519 U.S. 452 (1997) ................................................................................ 9

*BioDiversity Conservation All. v. Bureau of Land Mgmt.*,
   608 F.3d 709 (10th Cir. 2010) .......................................................... 10, 12

*Caddo Nation of Okla. v. Wichita & Affiliated Tribes*,
   877 F.3d 1171 (10th Cir. 2017) ............................................................. 15

*Chamber of Com. of U.S. v. Edmondson*,
   594 F.3d 742 (10th Cir. 2010) ................................................................ 6

*City & Cnty. of Denver, Colo.*,
   172 FERC ¶ 61,063 (2020) ..................................................................... 3

*City of Port Isabel v. FERC*,
   No. 23-1174, 2025 WL 838540 (D.C. Cir. Mar. 18, 2025) ....................... 15

*Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*,
   No. 09-cv-02757, 2013 U.S. ................................................................... 6

*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
   72 F.4th 1166 (10th Cir. 2023) .............................................................. 12

*Del. Riverkeeper Network v. U.S. Army Corps of Eng'rs*,
   869 F.3d 148 (3d Cir. 2017) .................................................................... 8

*E. Tenn. Nat. Gas Co. v. Sage*,
   361 F.3d 808 (4th Cir. 2004) ................................................................ 6, 7

*Env't Def. Fund, Inc. v. Alexander*,
   614 F.2d 474 (5th Cir. 1980) ................................................................. 15

*Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*,
   887 F.3d 906 (9th Cir. 2018) ........................................................ 8, 12, 13

i

*Gill v. Whitford*,
585 U.S. 48 (2018) .................................................................................. 13

*Hernandez v. Reno*,
91 F.3d 776 (5th Cir. 1996) ................................................................... 13

*James River Flood Control Ass'n v. Watt*,
680 F.2d 543 (8th Cir. 1982) .................................................................. 7

*Kisor v. Wilkie*,
588 U.S. 558 (2019) ................................................................................ 9

*McClendon v. City of Albuquerque*,
79 F.3d 1014 (10th Cir. 1996) .............................................................. 14

*MCR Oil Tools, LLC v. United States Dep't of Transp.*,
No. 24-60230, 2024 WL 2954416 (5th Cir. 2024) .................................. 7

*Middle Rio Grande Conservancy Dist. v. Norton*,
294 F.3d 1220 (10th Cir. 2002) ............................................................ 12

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) .............................................................................. 14

*Nken v. Holder*,
556 U.S. 418 (2009) .......................................................................... 4, 14

*Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*,
872 F.2d 75 (4th Cir. 1989) .................................................................. 15

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
908 F.3d 476 (9th Cir. 2018) ................................................................ 10

*Save the Colo. v. U.S. Bureau of Reclamation*,
No. 17-2563 (D. Colo. Dec. 10, 2020) .................................................. 10

*Save the Colorado v. Spellmon*,
50 F.4th 954 (10th Cir. 2022) ................................................................ 4

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
239 F. Supp. 3d 77 (D.D.C. 2017) ........................................................ 15

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
985 F.3d 1032 (D.C. Cir. 2021) ............................................................ 14

*Universitas Education, LLC v. Avon Capital, LLC,*
   124 F.4th 1231 (10th Cir. 2024) ................................................................. 8

*Valley Cmty. Pres. Comm'n v. Mineta,*
   373 F.3d 1078 (10th Cir. 2004) ......................................................... 14, 15

*Wilderness Workshop v. U.S. Bureau of Land Mgmt.,*
   531 F.3d 1220 (10th Cir. 2008) ................................................................ 15

**Statutes and Regulations**

42 U.S.C. §4332 ................................................................................... 3, 12

18 C.F.R. §12.4(b) ...................................................................................... 5

40 C.F.R. §230.3(l) ................................................................................... 12

40 C.F.R. §§230.3(*l*), 230.10(a)(2) ........................................................ 11

40 C.F.R. §230.10(a)(2) ..................................................................... 8, 12

40 C.F.R. §230.10(a)(3) ............................................................................ 8

Respondent-Intervenor, The City and County of Denver, acting by and through its Board of Water Commissioners ("Denver Water"), moves for a stay pending appeal of this Court's April 3, 2025 Order (Dkt. 176, "Apr. 3 Order") enjoining further construction of the Gross Reservoir and Dam Project ("Project") and its October 17, 2024 merits Opinion.[1]

Given the urgency of the situation, including because concrete pour and other seasonal Dam-raise activities were slated to resume next week so that Denver Water can remain on track to complete the Dam raise this year and the Project in 2027 as ordered by FERC, Denver Water asks that the Court decide this motion by <u>April 10, 2025</u>.

## INTRODUCTION

Denver Water moves for a stay pending appeal under Fed. R. Civ. P. 62(c). In its Opinion, this Court found error in the Corps' issuance of a Clean Water Act (CWA) Section 404 permit to allow a small amount of fill in connection with the Project and the corresponding National Environmental Protection Act (NEPA) analysis. This Court then took the extraordinary step of enjoining "any further construction on the Gross Dam" (Apr. 3 Order at 22) even though construction has been underway for three years; the Dam is more than 60% raised; and FERC ordered Denver Water to complete work by mid-2027.

All factors weigh in favor of a stay pending appeal. Denver Water faces enormous irreparable harm from the Order stopping ongoing Project construction, which may threaten the safety of the half-constructed Dam; require Denver Water to quickly lay off hundreds of construction workers; impose millions in additional materials and equipment

---

[1] This decision, Dkt. 151, was titled "Order on Petition for Review of Agency Action." To distinguish it from the remedy order, Denver Water refers to it as the "Opinion."

costs on Denver Water and its ratepayers; and increase the risk of water shortages. For many of the same reasons, the equities and public interest favor allowing Denver Water to continue work while its appeal proceeds. And Denver Water is likely to succeed on the merits of its appeal because the Court (1) misinterpreted the CWA §404 Guidelines' practicability analysis; (2) misapplied NEPA and the CWA in concluding the Corps had to quantitatively assess the effects of climate change on the Project; (3) second-guessed the Corps' reasonable approach to comparing costs; and (4) issued an injunction stopping construction despite Petitioners' failure to address all factors of the injunctive relief analysis and justify that extraordinary—and extraordinarily damaging—form of relief.

The Court should stay the Order and the Opinion while the Tenth Circuit reviews those decisions. Denver Water respectfully requests that the Court rule on this request by April 10, 2025 so it may seek appropriate relief in the court of appeals, if necessary.

## **BACKGROUND**

The facts and case history are set forth in prior briefs and the Court's Opinion. Briefly, the Gross Reservoir and Dam are integral to Denver Water's system, which now serves more than 1.5 million people and consists of two geographically separate—and dramatically imbalanced—water collection and treatment systems. If the South System, which provides 90% percent of Denver Water's storage and 80% of its supply (AR123804), goes down, the North System, which can run out of water in *a single dry year* (AR123803-04), may not be able to supply sufficient water. AR123779; AR123803-04. For two decades, Denver Water has been pursuing the Project to fix this problem.

Nearly every solution would require a Clean Water Act §404 permit allowing the

discharge of fill material into waters of the United States, so the Corps was the lead agency conducting the required CWA and NEPA analyses. *See* 42 U.S.C. §4332. The Corps distilled Denver Water's needs to two essential components: timeliness (the near-term risk of water shortage) and location (the need to fortify the North System by delivering more water to the Moffat Treatment Plant). AR000022-23. To evaluate which alternatives might satisfy these needs, the Corps narrowed 300+ options to 34 alternatives for further screening, then six alternatives for final analysis. AR000023-4. The greater impacts of all other alternatives informed the Corps' conclusion that the Project is the environmentally preferable alternative under NEPA and the least-environmentally-damaging practicable alternative (LEDPA) under the CWA. AR123707-09, AR000030.

Gross Dam is a FERC-licensed hydroelectric facility, so Denver Water needed FERC's authorization to enlarge it. Denver Water submitted a license amendment to FERC in 2016. FERC cooperated with the Corps in preparing the NEPA analysis but also conducted its own supplemental environmental assessment. *City & Cnty. of Denver, Colo.*, 172 FERC ¶ 61,063, P 74 (2020). In 2020, FERC issued an Order approving Denver Water's license amendment and *requiring* Denver Water to reconstruct the Dam and enlarge the reservoir beginning in 2022 and ending in mid-2027. *Id.* ¶ 70.

Petitioners sought—too late—to participate in FERC's proceeding. 165 FERC ¶ 61,120 (2018) (denying untimely request). Petitioners then filed this case, bringing claims under the APA, CWA, NEPA, and the Endangered Species Act (ESA).

After jurisdictional motions practice (including an appeal, *see Save the Colorado v. Spellmon*, 50 F.4th 954, 971 (10th Cir. 2022)), Petitioners moved for judgment on the

administrative record. Denver Water and the United States opposed, and the Court heard argument. In October 2024, it ruled in Petitioners' favor on the CWA and NEPA claims and directed the parties to file simultaneous remedy briefs. Dkt. 151. The parties did so.[2]

On April 3, 2025, the Court ordered vacatur of the Corps' Record of Decision, FEIS, and §404 Permit for the Moffat Collection System Project. Apr. 3 Order 6-13. The court also preliminarily enjoined "any further construction on the Gross Dam," pending a hearing during which the court plans to take testimony from engineering experts to decide the scope of "a tailored permanent construction injunction." *Id.* at 19, 22. And the court permanently enjoined enlargement of the Gross Reservoir. *Id.* at 21.

## ARGUMENT

### I. The Court Should Stay the Order and Opinion Pending Appeal.

The Court should stay enforcement of the Order and Opinion pending appeal. Whether a judgment below should be stayed pending appeal turns on four factors:

> (1) whether the stay applicant has made a strong showing that he [or she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted). Each favors a stay here.

### A.    Irreparable harm will result if a stay is not entered.

The Court's Order will cause irreparable harm if it remains in place pending appeal, including both non-economic harms to the public and irreparable economic harms.

---

[2] The Court construed Petitioners' brief as a motion for injunctive relief and Denver Water and the government's briefs as responses; allowed Petitioners a reply; and allowed Denver Water and the United States to file sur-replies. Dkt. 158, 168-70, 172.

*First*, halting construction of the Dam at this stage creates safety and structural risks. FERC alone is charged with protecting "the safety, stability, security, and integrity of the project," as well as "life, health, or property," and thus requires compliance with a strict construction schedule. 18 C.F.R. §12.4(b). Abrupt discontinuation of the Project in contravention of FERC's Order will have devastating and potentially dangerous impacts.

As explained by Denver Water's Project Manager, an experienced engineer, the half-raised dam currently has no spillway, stilling basin, or auxiliary outlet works, resulting in a compromised ability to respond to flooding. Martin Suppl. Decl. (Dkt. 155-1) ¶9a. The portion of the still-exposed face of the Dam has been "hydro-demolished" by removing several inches of concrete to ensure a strong, structural substrate for bonding the new dam to the old, and "prolonged exposure to the elements will deteriorate the substrate[.]" *Id*. ¶9(c). Excavation and deconstruction of the original dam's foundation also exposed steep rock slopes, stabilized temporarily by bolts. *Id.* ¶9b. Raising the dam to its new final height and completing the "arch" structure must happen as quickly as possible to stabilize and support those surfaces. *Id.* Abandonment of construction efforts—even temporarily—could result in flooding or structural deterioration, presenting unnecessary safety risks. These safety and security risks are irreparable harms. And while the Court has indicated it intends to hold a hearing to "tailor" its injunction of Dam construction to try to "make the existing dam safe," it has been quite clear that it will continue to enjoin construction via a "tailored permanent construction injunction." Apr. 3 Order at 19.

*Second*, any construction delay that lasts more than a few weeks may require Denver Water to further reduce the water level in the reservoir (already low, per FERC's Order,

until the Dam is finished) to reduce pressure on the structure. Decl. (Dkt. 155-1) ¶13. This will further threaten the precarious water supply on which residents and businesses depend, imposing more irreparable harm. *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004) (finding irreparable harm where utility could not operate at capacity).

*Third*, halting Project work will also cause severe and irreparable economic harm to Denver Water and its workers. *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 770-71 (10th Cir. 2010) (irreparable harm exists where recovery of interim economic loss is not feasible). Denver Water has no way to recover the many millions of dollars it will lose due to construction delays.[3] Martin Decl. (Dkt. 138-1) ¶¶42-43. Irreparable economic harms will result from Denver Water's loss of a skilled work force, and de-mobilization and re-mobilization of equipment and workers.[4] If the Order remains in place for more than a few weeks, Denver Water likely will have to lay off many construction personnel. When the Corps completes its remand process, those workers will have to be replaced and new ones trained, to finish the Project. Those costs are also irreparable harm.[5]

*Finally*, the Order will render completion of the Project by 2027 impossible even if

---

[3] *Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co.*, No. 09-cv-02757, 2013 U.S. Dist. Ct. Briefs LEXIS 1822, at *5 (D. Colo. Oct. 7, 2013) ("[D]efendants must spend millions of dollars during the pendency of their appeal if a stay is not entered, an injury that is 'both certain and great' and therefore irreparable.") (*quoting Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234 (10th Cir. 2001)).

[4] *Alaska Survival v. Surface Transp. Bd.*, 704 F.3d 615, 616 (9th Cir. 2012) (equities favor construction when "delay … will prevent the award of construction contracts, postpone the hiring of construction employees, and significantly increase costs").

[5] *See id.* ("[b]ecause this project is funded largely with taxpayer dollars, these increased costs of construction . . . will burden the public"); *MCR Oil Tools, LLC v. United States Dep't of Transp.*, No. 24-60230, 2024 WL 2954416, at *6 (5th Cir. 2024) (recognizing significant loss of revenue and the need to lay off workers as irreparable harms).

6

Denver Water prevails on appeal.[6] Construction of the Dam has been ongoing since April 2022, per FERC's Order. To date, Denver Water has raised the new Dam structure approximately 60% of the way, leaving only around 171 vertical feet to be completed, and was on schedule to complete all Project work by the 2027 deadline—and the Dam structure in 2025. No. 18-cv-3258, Dkt. 145 at 1. If Denver Water loses more than a few weeks of the 2025 construction season—which was set to begin April 7 or as soon after as the weather allows—it will not be able to complete placement of concrete for the Dam this construction season, and the entire Project will fall behind by at least one year. The April 3 Order thus exposes Denver Water to penalties for non-compliance with FERC's Order, loss of its hydropower license, or even criminal prosecution. That too is irreparable harm. *See Sage*, 361 F.3d at 828 (finding irreparable harm where petitioners would be prevented from meeting FERC's construction deadline for gas pipeline).

  B.  <u>Denver Water is likely to prevail on appeal.</u>

  Denver Water is likely to prevail on the merits of its appeal, which raises several errors in the Court's decision, plus the improper award of injunctive relief. At the very least, the appeal presents difficult legal issues, which weighs in favor of maintaining the status-quo—continued work on the more than half-built dam—while the appeal is pending. *See Universitas Education, LLC v. Avon Capital, LLC*, 124 F.4th 1231, 1242 (10th Cir. 2024).

   *i. The Court incorrectly found error in the Corps' alternatives analysis.*

  *First*, the Court misinterpreted the concept of a "practicable" alternative by conflating

---

[6] *James River Flood Control Ass'n v. Watt*, 680 F.2d 543 (8th Cir. 1982) (finding irreparable harm where petitioner would lose chance to begin construction and be delayed a season).

the distinct regulatory phrases "basic purpose" and "overall project purpose." Under the CWA, the Corps must identify the basic purpose of a project to determine whether it is water-dependent, 40 C.F.R. §230.10(a)(3), and then evaluate practicable alternatives "in light of overall project purposes" to identify the least environmentally damaging practicable alternative (LEDPA). *Id.* §230.10(a)(2). This Court wrongly opined that those terms nonetheless must be interpreted to mean the same, single purpose.

The Corps, however, reasonably views a project's "basic purpose" as being the irreducible goal of the project, AR000022, whereas "overall project purposes" separately incorporate the project proponents' specific goals, AR000023.[7] No circuit has disapproved this approach; in fact, many reflect it as the standard.[8] Here, the Corps identified "supplemental water supply" as the basic purpose of the Project and "develop[ing] 18,000 [acre-feet per year] of new, firm yield to the Moffat Treatment Plant" as overall project purposes. AR000022-23. After a thorough review the Corps concluded that the Project—which impacted a small amount of wetlands but had far fewer overall environmental impacts than other practicable alternatives—was the LEDPA. AR000030.

Even though the Court found the Corps' approach "prima facie valid," Slip Op. 49, it wrongly found ambiguity in the regulatory terms "basic purpose" and "overall project purposes" and held that the Corps was wrong to give them independent meaning. But

---

[7] *See* Dep't of Army, *Updated Standard Operating Procedures for the U.S. Army Corps of Engineers Regulatory Program* 15 (July 1, 2009), https://tinyurl.com/ycyh45d8; U.S. Army Corps of Engineers Walla Walla District, Ref. Guide for CWA § 404/RHA § 10 Permits 29-30 (2024), https://tinyurl.com/bdzcn463.

[8] *E.g.*, *Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 912 (9th Cir. 2018); *Del. Riverkeeper Network v. U.S. Army Corps of Eng'rs*, 869 F.3d 148, 157-58 (3d Cir. 2017).

where litigants present competing interpretations of a regulation, the court must first "exhaust[]" the traditional tools of statutory construction—text, structure, history, and purpose—and assess the meaning on its own "before concluding that a rule is genuinely ambiguous." *See Kisor v. Wilkie*, 588 U.S. 558, 575 (2019). Here, the use of different words ("basic" vs. "overall") conveys different meanings, as does the use of the singular ("project purpose") vs. plural ("project purpose<u>s</u>"). There is nothing ambiguous about that.

To find otherwise, the Court wrongly deferred to an interpretation in old EPA comment letters that conflated the two regulatory terms, citing *Auer v. Robbins*, 519 U.S. 452 (1997). But *Auer* deference can only apply where an agency seeks it and shows the Court its interpretation is, *inter alia*, well-reasoned, longstanding, reflects *that agency's* "official position," and is based on its expertise. *Kisor*, 588 U.S. at 577. Here, the regional EPA office did not press its old interpretation after initially raising it, and EPA later affirmatively declined to elevate the permit for further review. EPA is not before the Court; did not seek deference to its interpretation of the Guidelines; and the historic documents supposedly supporting that interpretation are not official positions. Deferring to EPA's supposed historic interpretation of the Guidelines was thus legal error.

Further, an action agency's decision must stand or fall based on the rationale it provided.[9] Here, the action agency is the Corps, not EPA, and so the Court should have been guided by *the Corps' analysis and explanation* of how it applied the regulations to these facts, not old EPA comments on other projects.

The Court's incorrect interpretation of the Section 404 Guidelines was then extended

---

[9] *Regents of Univ. of Cal. v. Dep't of Homeland Sec.*, 908 F.3d 476, 502 (9th Cir. 2018).

to NEPA and informed the Court's conclusion that the Corps' practicable alternatives analysis was unlawfully narrow. Slip Op. 72, 78. But an agency's NEPA evaluation of purpose and need and resulting alternatives is held to a more deferential standard. *BioDiversity Conservation All. v. Bureau of Land Mgmt.*, 608 F.3d 709, 715 (10th Cir. 2010). The record fully supports Denver Water's dual needs (for both more water *and* to correct the imbalance between its systems), *e.g.*, AR000228, and the evaluation of a reasonable range of alternatives to satisfy them, *e.g.*, AR123842-952.[10] Because the Court misinterpreted and misapplied the regulatory scheme, Denver Water is likely to succeed in appealing this Court's decision.[11]

> ii. *The Court applied the wrong legal standards to conclude that the Corps did not sufficiently consider climate change impacts or costs.*

Next, the Court's evaluation of the Corps' duties to assess climate change impacts and costs under the CWA and NEPA was also improper. When determining whether an alternative is practicable, the Corps asks whether it is "available and capable of being done after taking into consideration cost, existing technology, and logistics…." 40 C.F.R. §§230.3(*l*), 230.10(a)(2). Here the Corps did just that, *e.g.*, AR000023-30, AR123818-

---

[10] *See Save the Colo. v. U.S. Bureau of Reclamation*, No. 17-2563 (D. Colo. Dec. 10, 2020) (upholding inclusion of water supply project's goals of increasing reliability *and* more water in purpose-and-need statement and evaluation of alternatives).

[11] Even accepting, *arguendo*, the atextual view that "basic purpose" and "overall project purposes" mean the same thing, the Court still erred. EPA agrees a "basic" project purpose can have more than one component. EPA, *Final Determination for the Two Forks Water Supply Impoundments* 2 n.2, 10-11 (Nov. 23, 1990) ("Both the Corps and EPA have used the singular "basic purpose" or "project purpose" to include more than one concept (e.g., residential housing with recreational amenities)."), https://tinyurl.com/5n6t25hn. Here, *where* the water would be stored is as important as *how much* would be obtained.

936, and Plaintiffs did not contend the Project is not "available and capable of being done."

Instead, Plaintiffs asserted that the Corps should have evaluated the extent to which climate change and its effects on precipitation and streamflows *would affect future water supplies and thus the Project's ability to fulfill its purpose*. But whether a project will achieve its goals is a different question than whether it is practicable based on cost, technology, and logistics. The Corps nevertheless responded to comments on this point, assessing climate change's effect on precipitation and streamflows and explaining why and how it undertook a qualitative analysis. *E.g.*, AR000142-43, AR000229. Although it is not clear how climate change will affect Denver Water's system yields,[12] the Corps reasonably concluded that, even if yields are reduced, the Project's purpose—to increase the reliability of the water supply to the North System—will be met. AR000125-28.

In concluding otherwise, the Court not only wrongly substituted its view of climate data, but also asked the wrong question: whether climate change will make the Project unsuccessful. Ensuring a project serves its stated goals is the project proponent's task, not the Corps'. And NEPA directs agencies to evaluate "reasonably foreseeable" effects "of the proposed agency action" on the environment—not the other way around.[13] The climate change impacts *from* a project thus may merit consideration,[14] but the effects of

---

[12] *See* AR000231 (projections show both "potential increases and decreases" in precipitation); *see also* AR000117; AR130126.

[13] *See* 42 U.S.C. §4332(C)(i); see also *Middle Rio Grande Conservancy Dist. v. Norton*, 294 F.3d 1220, 1224-25 (10th Cir. 2002) (giving overview of NEPA and noting agency assesses "the environmental consequences of its actions").

[14] The Corps took a hard look at the greenhouse gas emissions *from* the Project, *e.g.*, AR000231-32, and Petitioners did not argue otherwise.

climate change *on* a project do not.[15] Departing from other courts' approaches,[16] the Court applied the same incorrect CWA analysis to its NEPA findings. Slip Op. at 80-82.

The Court also erred in reviewing the Corps' assessment and comparison of the Project and alternatives' costs. NEPA does not require an agency to consider costs. Nor does the CWA, apart from the 404 Guidelines identifying cost as a factor to be considered in determining whether an alternative is "practicable." 40 C.F.R. §230.3(l); 40 C.F.R. §230.10(a)(2). No "particular metric" is required; "so long as the Corps' evaluation of costs is reasonable, [the court] must defer to it." *Friends of Santa Clara River*, 887 F.3d at 922.

The Corps' costs analysis here easily meets that deferential standard. The Corps reasonably used "capital construction costs" as the primary metric, AR000118-21, and developed "rough order-of-magnitude costs" and "relative development cost" metrics to account for ancillary costs, including permitting and mitigation, that it applied to *all* screened alternatives. AR167650-52. The Corps reasonably projected that a larger-scale project with larger construction costs will have larger permitting and mitigation costs and applied a 1.5x multiplier to account for such costs. *See id.*; AR 123832-33. After applying that approach to all alternatives, the Corps only eliminated alternatives over *five* times as expensive as the Project. AR167652-64; AR000121. This is reasonable, and there is no record basis to suggest a different approach to mitigation and permitting costs would have resulted in the selection of a different alternative. Denver Water is thus likely to show on

---

[15] *STC*, No. 17-2563, at 32 ("The impact of greenhouse gas emissions on climate change is far different than the impact of climate change on a … water right.").

[16] *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 72 F.4th 1166, 1179-84 (10th Cir. 2023) (addressing climate changed-induced increase in "potential harm *from* the [action's] expected water depletions") (emphasis added).

appeal that the Court was wrong to reject the Corps' costs analysis.

### iii.  The court failed to narrowly tailor injunctive relief.

The Court's Order broadly enjoining work on the Project is also legal error. Remedies must be "tailored to redress" a plaintiff's injury, *Gill v. Whitford*, 585 U.S. 48, 73 (2018), and should not provide more relief than "necessary to give the prevailing party the relief to which [it] is entitled," *Hernandez v. Reno*, 91 F.3d 776, 781 & n.16 (5th Cir. 1996).

Here, the Apr. 3 Order enjoining Dam construction does not correspond to the relief Petitioners requested when they sued. Petitioners asked the Court to set aside *the Corps' actions* (the §404 permit, ROD, and FEIS), but *not* FERC's Order. Dkt. 45-1. And at argument in the Tenth Circuit, they disclaimed any intent to stop the Dam raise.[17] But that is what the Apr. 3 Order does: it enjoins work ordered by FERC, including the raising of Gross Dam to a specific height, in a specific form. Meanwhile, the action taken under the Corps' §404 permit—placement of a small amount of fill at the Dam base—is complete. No more fill will be placed or any other pollutant discharged for the Project.

The April 3 Order also is not narrowly tailored to address the environmental harms Petitioners claim will result from continuing work on the Project. The Order not only bars expansion of the Reservoir (the stage Petitioners and the Court identified as resulting in environmental harms such as removal of trees), but also the continued <u>vertical</u> raise of the Dam. Neither Petitioners nor the Court identified environmental harms from continuing to pour concrete to raise the new Dam to the height and shape prescribed by FERC.

---

[17] Oral Arg. 39:08-39:17 (the "question to FERC was … do we raise this one dam?"; "[w]e don't care about that issue. We are not suing about that issue"), https://www.ca10.uscourts.gov/sites/ca10/files/oralarguments/21-1155.mp3.

Further, Petitioners did not meet all four factors of the injunctive relief test. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57, 165 (2010). Petitioners did not even address the public interest, which can "outweigh" other factors when "dealing with a partially-completed project," making the "public interest in favor of continuing . . . much stronger." *Valley Cmty. Pres. Comm'n v. Mineta*, 373 F.3d 1078, 1087 (10th Cir. 2004). Nor did they try to balance the harms to the public and Project against the claimed environmental harms. The Court should have held Petitioners to their burden.[18]

C.      The equities and public interest favor a stay.

The equities and public interest strongly favor staying the Order pending appeal, which would not "substantially injure" Petitioners. *Nken*, 556 U.S. at 426. It would only "restore" the "status quo" that the district court "substantially altered"—which is that the Dam has been under construction since 2022, per FERC's Order. *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1024 (10th Cir. 1996). Where "we are dealing with a partially-completed project … the public interest in favor of continuing the project is much stronger." *Valley Cmty. Pres. Comm'n*, 373 F.3d at 1087. Further, "[e]quity demands that those who would challenge the legal sufficiency of administrative decisions concerning time sensitive public construction projects do so with haste and dispatch. To require any less could well result in costly disruptions of . . . construction." *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989). Petitioners' failure to seek

---

[18] *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1054 (D.C. Cir. 2021) (reversing injunction because court did not consider *Monsanto* factors).

injunctive relief before construction started also favors staying the Apr. 3 Order.[19]

Meanwhile, the public will suffer the most if the April 3 Order is not stayed. Halting Dam construction creates unnecessary safety risks; increases the risk of water shortages while the Project sits dormant; will require Denver Water to dismiss workers; and will waste ratepayer dollars on increased material and equipment costs. These public harms must be weighed against the claimed environmental harms from the Project—considered as of now, when the Dam is 60% raised and the fill allowed by the Corps permit has been placed. And they should be considered in light of Colorado's conclusion that, on net, the Project will be *environmentally beneficial*. AR000388, AR000416.

Public and worker safety, Dam stability, flood control, and sufficient water supply hang in the balance. These are precisely the circumstances where courts permit projects to proceed despite concerns about potential errors in related permitting decisions.[20]

## **CONCLUSION**

The Court should stay its Opinion and Order pending appeal.

Respectfully Submitted,

Jessica R. Brody
Crystal J. Easom
DENVER WATER
1600 West 12th Avenue

/s/ Amanda Shafer Berman
Amanda Shafer Berman
Elizabeth Boucher Dawson
CROWELL & MORING LLP

---

[19] *See Caddo Nation of Okla. v. Wichita & Affiliated Tribes*, 877 F.3d 1171, 1175-76 (10th Cir. 2017); *Env't Def. Fund, Inc. v. Alexander*, 614 F.2d 474, 475-77 (5th Cir. 1980) (laches barred "attempt to halt the construction" after Corps spent $265 million and completed 18% of project); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 239 F. Supp. 3d 77, 87-88 (D.D.C. 2017) (laches barred request to halt construction).

[20] *E.g., City of Port Isabel v. FERC*, No. 23-1174, 2025 WL 838540, at *2 (D.C. Cir. Mar. 18, 2025); *Wilderness Workshop v. U.S. Bureau of Land Mgmt.*, 531 F.3d 1220, 1231 (10th Cir. 2008) (environmental harm outweighed by public interest in gas production).

Denver, CO 80204-3412
(303) 628-6460
Jessica.brody@denverwater.org

1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2500
aberman@crowell.com

*Attorneys for Respondent-Intervenor, the City and County of Denver,
acting by and through its Board of Water Commissioners*

**Certificate of Conferral**

Undersigned counsel certifies under Local Rule 7.1, that she conferred with counsel for Petitioners, who oppose this Motion.

Counsel for the Federal Defendants conveyed that Federal Defendants do not oppose the relief sought in this Motion.

/s/ Amanda Shafer Berman

**Certificate of Service**

Undersigned counsel certifies that service was made on counsel of record for all parties via filing on the CM/ECF system.

/s/ Amanda Shafer Berman