IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-03258-CMA

SAVE THE COLORADO,
THE ENVIRONMENTAL GROUP,
WILDEARTH GUARDIANS,
LIVING RIVERS,
WATERKEEPER ALLIANCE, and
SIERRA CLUB,

    Petitioners,

v.

TODD T. SEMONITE, in his official capacity as the Chief of the U.S. Army Corps of Engineers,
RYAN ZINKE, in his official capacity as Secretary of the Interior, and
MARGARET EVERSON, in her official capacity as Acting Director of the U.S. Fish and Wildlife Service,

    Respondents, and

CITY AND COUNTY OF DENVER, ACTING BY AND THROUGH ITS BOARD OF WATER COMMISSIONERS,

    Respondent-Intervenor.

## ORDER

### I.    BACKGROUND

On October 16, 2024, this Court entered its Order on Petition for Review of Agency Action finding that the U.S. Army Corps of Engineers (the "Corps") had failed to comply with the Clean Water Act ("CWA"), Administrative Procedure Act ("APA"), and National Environmental Policy Act ("NEPA") when it issued the dredge-and-fill permit

allowing the City and County of Denver's Board of Water Commissioners ("Denver Water") to expand the Gross Dam and Reservoir (the "the Moffat Collection System Project" or the "Project"). *See* (Doc. # 151).

On April 3, 2025, after extensive briefing from the parties, this Court entered its Order on remedies for the Corps' serious and numerous violations of environmental laws, ordering: (1) remand with vacatur of the Corps' Record of Decision ("ROD"), Final Environmental Impact Statement ("FEIS"), and Section 404 Permit ("Permit") for the Moffat Collection System Project; (2) a preliminary injunction prohibiting any further construction on the Gross Dam until a hearing could be held at which experts could advise the Court on what is reasonable and necessary to ensure that the dam, as it is currently constructed, will be structurally safe; and (3) a permanent injunction prohibiting enlargement of the Gross Reservoir, including tree removal, water diversion, and impacts to wildlife. *See* (Doc. # 176).

The next day, on April 4, 2025, Intervenor Denver Water filed an emergency motion requesting this Court to enter a blanket stay of both its October 16, 2024 Order and its April 3, 2025 Order pending appeal. (Doc. # 178.)

For the reasons explained below, this Court denies Denver Water's emergency motion for a stay pending appeal. Although Denver Water did not request any alternative relief, the Court, understanding the gravity of these matters, has decided to exercise its discretion and grants Denver Water an alternative 14–day temporary stay applicable only to the preliminary injunction in the event Denver Water wishes to seek an emergency

stay from the Tenth Circuit pursuant to Rule 8(a)(2) of the Federal Rules of Appellate Procedure.

## II.     LEGAL STANDARD

### A.     FEDERAL RULE OF CIVIL PROCEDURE 62

Federal Rule of Civil Procedure 62 addresses a stay of proceedings to enforce a judgment. Subpart (c) states, in relevant part:

> **(c) Stay of an Injunction, Receivership, or Patent Accounting Order.**
> Unless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken:
>
>> (1) an interlocutory or final judgment in an action for an injunction or receivership; . . .

Rule 62 gives discretion to the district court whether to issue a stay of an injunction during the pendency of appeal. *See Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1025, 1040 (10th Cir. 1998); *Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 522 n.7 (9th Cir. 1984).

### B.     FACTORS CONSIDERED UNDER THE STANDARD FOR A STAY

Under the "traditional" standard for a stay, a court considers four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (citation omitted). *See also In re Lang*, 414 F.3d 1191, 1201 (10th Cir. 2005).

### III. ANALYSIS

**A.   ALL FOUR FACTORS WEIGH AGAINST A STAY OF THE COURT'S ORDERS**

Intervenor Denver Water argues nothing new in its Motion for Stay Pending Appeal.[1] This Court has already rejected every argument made by Denver Water, except for deferring ruling on a permanent injunction pending a hearing on what is reasonable and necessary to ensure that the dam is structurally safe. The Court will not allow Denver Water to relitigate issues it has already lost on before this Court. Thus, the Court refers to its prior findings below when finding that Denver Water fails to prove a stay is appropriate pending appeal.

   1.   <u>Denver Water has already failed on the merits of its arguments</u>

Under this factor, Denver Water argues the Court incorrectly found error in the Corps' alternatives analysis and applied the wrong legal standards to conclude that the Corps did not sufficiently consider climate change impacts nor conduct a reasonable cost analysis. *See* (Doc. # 178 at 12–18). The Court disagrees. It has detailed at length its reasons for finding serious errors in the Corps' alternatives analysis, as well as its unreasonable cost analysis and failure to seriously consider the potential effects of climate change. *See* (Docs. ## 151, 176 at 5–11). Further, the Court detailed its reasons for ordering a permanent injunction prohibiting enlargement of the Gross Reservoir. *See* (Doc. # 176 at 19–21). It will not revisit or reconsider those findings now.

It is apparent from its motion to stay that Denver Water's main concern is with the preliminary injunction prohibiting commencement of further construction on the dam

---

[1] The Court notes that Respondents have not joined in Intervenor's stay pending appeal.

pending a hearing. Denver Water indicates that it had planned to commence construction on "April 7 or as soon after as the weather allows." See (Doc. # 178 at 12). Denver Water further asserts that it "faces enormous irreparable harm from the Order stopping ongoing Project construction, which **MAY** threaten the safety of the half-constructed Dam."[2] See (Doc. # 178 at 6) (emphasis added). The Court acknowledges that there may be safety concerns regarding the unfinished dam. However, it is precisely this type of noninformative, noncommittal, the-sky-is-falling language that caused the Court to preliminarily, rather than permanently, enjoin further construction of the dam until it could hear from the experts regarding what, if anything, is necessary to address the safety concerns. It is not clear to the Court that the only means of addressing the safety concerns is to complete construction of the dam to the specifications originally contemplated by the Project. Nonetheless, understanding that time is of the essence, the Court offered the parties a hearing date as soon as April 22, immediately following its two-week criminal trial. (Doc. # 176 at 22.)

Further, the Court rejects Denver Water's argument that allowing construction on the dam to commence would "restore the status quo." Not only did the Corps have warnings of potential environmental violations years before this case was filed, but this case also commenced in 2018—four years before Denver Water began construction on the new dam. This Court is therefore not convinced by the argument that continuing

---

[2] Denver Water continues to ignore the fact that it caused the alleged safety issues by deciding to tear down the old gravity dam and begin construction on the new arch dam despite being aware of the potential serious environmental law violations voiced by Petitioners, the public, and the EPA. See (Doc. # 176 at 15–17, 19–21).

construction on the dam is the "status quo." Instead, this Court's view is that the status quo would have been the state of things before the gravity dam was ever torn down.

The Court therefore finds that Denver Water has failed to make any showing (let alone a strong one) that it is likely to succeed on the merits of arguments it has already made and lost to this Court.

2.   Denver Water will not be irreparably injured absent a stay

Denver Water makes no arguments that have not already been rejected by this Court with respect to irreparable injury in this case. The financial concerns argued by Denver Water do not outweigh the irreparable injury of environmental harm. *See* (Doc. # 176 at 14–16). Denver Water took a calculated risk when it decided to move forward with construction despite the lawsuit. With respect to safety concerns, as stated above, this is why the Court's injunction related to construction of the dam was preliminary pending a hearing on what is reasonable and necessary to make the existing dam safe, including what is necessary for continued site stabilization, monitoring, and maintenance activities. *See* (Doc. # 176 at 17–19). The Court therefore finds that this factor also weighs against a stay.

3.   Issuance of the stay requested would substantially injure Petitioners

For the reasons already stated by this Court, remand with vacatur of the Corps' ROD, FEIS, and Permit, a preliminary injunction related to further construction on the Gross Dam, and a permanent injunction prohibiting enlargement of the Gross Reservoir are all appropriate. *See* (Doc. # 176). Allowing the Project to proceed without limitation during appeal after the Court's findings of serious environmental law violations by the

Corps and the imminent environmental harms by construction would render the Court's numerous findings in both its October 16, 2024 and April 3, 2025 Orders meaningless and would substantially injure Petitioners.[3] The Court therefore finds that this factor also weighs against a stay.

### 4.  Public interest weighs against a stay

The Court discussed the public interest at length in its April 3, 2025 Order. *See* (Doc. # 176 at 13, 16–17, 20–21). Denver Water raises no new arguments. The Court will therefore not revisit or reconsider its findings. Although some courts have found that the public interest in continuing a project that has already begun is stronger than the public interest in complying with NEPA, this Court will not reward Denver Water for starting construction on the Project despite being aware of the seriousness of the environmental law challenges by Petitioners. *See* (Doc. # 176 at 17). With respect to safety concerns, as stated above, the Court takes this seriously and has ordered the parties to schedule a hearing to determine what it will take to make the dam as it is currently constructed safe after hearing from experts.

## B.   14–DAY TEMPORARY STAY

Notwithstanding the many factors weighing against a stay, the Court, in its discretion, grants Denver Water a temporary 14–day stay of only the preliminary injunction prohibiting further construction on the dam.[4]

---

[3] The Court also acknowledges the potential implications of allowing the dam to be completed as the Corps restarts its analysis. The Corps may be more inclined to the find that the Project is the "Least Environmentally Damaging Practicable Alternative" ("LEDPA") when considering a finished arch dam that never should have been started to begin with. Again, the Court will not reward Denver Water for starting the Project despite warnings that it was on shaky ground.

[4] The Court did not give Petitioners the opportunity to file a response to Denver Water's Motion because Denver Water argues that time is of the essence. That Court issues this 14-day stay fully aware that

With the Court's denial of its motion for a stay pending appeal, Denver Water can now file an emergency appeal for a stay with the Tenth Circuit under Rule 8(a)(2) of the Federal Rules of Appellate Procedure. Considering this, in its discretion, the Court grants Denver Water an alternative 14–day temporary stay of only the preliminary injunction.

## IV.     CONCLUSION

For the foregoing reasons, the Court DENIES Respondent-Intervenor Denver Water's Motion for Stay Pending Appeal (Doc. # 178). Exercising its discretion, despite Denver Water not having made such a request, it is

FURTHER ORDERED that the Court GRANTS a temporary 14–day stay applicable only to the preliminary injunction prohibiting further construction on the dam to allow Denver Water to seek an emergency stay from the Tenth Circuit. In the meantime, because this Court has a busy docket, it highly recommends that the parties schedule the hearing the Court outlined in its April 3, 2025 Order.

DATED:  April 6, 2025

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

---

Petitioners would no doubt object because, based on its past behavior, Denver Water will recommence construction during the 14 days of this temporary stay pending a decision from the Tenth Circuit. That being said, the Court surmises that the degree of construction that may be completed would not surpass the suggested 340-foot dam height that Petitioners conceded in prior briefing would be acceptable to them because it would actually reinstate the status *quo ante*. *See* (Doc. # 157 at 9).